### THOMAS BURTON'S LESSEE v. WILLIAM, ROBERT, JOSEPH and BENJAMIN PRETTYMAN.

Supreme Court. Sussex. March 23, 1795.

*Wilson's Red Book, 58.*\*

*Miller* and *Bayard* for plaintiff.[1]

*Peery* and *Wilson* for defendants.

A perfect chain of title was not made out for the plaintiff, but not esteemed material. Plaintiff offered Thomas Prettyman as a witness.

Defendant proved that he had said if Thomas Burton recovered he was to have part of the land. *Peery* objected to his interest and read Gilb.Evid. 122 (Philadelphia edition), a person who has a promise of a lease, no witness to prove title, etc.

---

\* This case is also reported in *Bayard's Notebook, 90.*

[1] The report of this case in *Bayard's Notebook, 90,* lists Ridgely and Bayard as counsel for plaintiff.

*Bayard* in reply. The questions on evidence are greatly changed of late. The true question is, is the witness to derive a certain advantage.

PER CURIAM. The testimony must be rejected. 1 Term 163, 164 supports the case in Baron Gilbert, although it is a promise; 1 Str. 129, where a person who thinks himself interested is no witness.

Plaintiff claimed as heir in tail of his grandfather, William Burton, who had sold to defendant's grandfather part of the lands by deed of bargain and sale with warranty.

Defendants urged as one point that this was a discontinuance by tenant in tail and therefore plaintiff cannot bring ejectment and read 2 Cromp. 158, 2 Esp.N.P. 133, Salk. 241, 2 Bl. Comm. 189, 2 Bac.Abr. 89.

PER CURIAM. The bargain and sale is no discontinuance, but at most a base fee, and then an entry need not be proved, the fictitious one is sufficient. (*N.B. Vide* Saunders p. [386], it is no discontinuance but can only give such estate as bargainor had.)

The whole of the lands contended for were 1750 acres contained in a resurvey made on Cheat of 775 acres by William Prettyman, the grandfather of defendants, who had purchased Cheat 775, except two hundred acres, of William Burton above mentioned who was son of Joseph, who was son of old William Burton of Virginia whose will contained the questions in this cause. He devised a thousand acres in Long Neck in tail to John, remainder (vested) *to* Woolsey in tail, remainder over *to* Joseph in tail. East half of Cheat, 387½ acres on Indian River, is devised in tail to Joseph, remainder (vested) to Woolsey in tail, remainder over to John in tail. West half of the same tract is devised to Woolsey in tail, remainder to Joseph in tail, either upon Woolsey's dying without issue, or obtaining John's tract, remainder over to John in tail.

Plaintiff proved that John died without issue, that Woolsey took John's place, and that Joseph possessed the 775 acres.

*Wilson* urged that at least the remainder to Joseph upon Woolsey's moiety on his getting John's estate is absolutely void, being to take effect in prejudice and exclusion of the estate tail to Woolsey, Fearne Rem. 188 to 191. That it was no remainder by the definition of a remainder, *idem* page 7. That it could not be an executory devise being too remote, *idem* 322; and that it could not be a conditional limitation, for there are no words of condition annexed to the estate tail given Woolsey in his moiety.

*Bayard, contra,* contended that indulgence is given to wills; that the doctrine would be true had this conveyance been by deed, but by will it was a good conditional limitation, and read. Fearne Rem. 174, 195, 196.

PER CURIAM. It is a conditional limitation and clearly good by devise, and would not suffer a reply.

*Wilson* and *Peery* contended that the power given to either of his sons in the latter part of the will to sell or transfer their parts. to any of the family and name of Burton by the words, "nevertheless it is provided that if any of my sons aforesaid should incline or think fit to sell or transfer any of their lands by me given to them or any one of them, it is and shall be lawful for them or any of them to sell their lands to any of their brothers or to their heirs anything herein contained to the contrary notwithstanding, [but] to no other person or persons whatsoever; neither shall the purchaser thereof have power or liberty to dispose of the said land so purchased by him out of the name or family of their said brethren or their lawful heirs aforesaid forever," gives. a fee. If *A* devises lands to *B* to give [and] sell, it is a fee, 2 Bac. Abr. 53; as will any words which empower a devisee to do more with it than he could with any other estate, Fearne Rem. 86, Salk. 234, 239. If the words be taken according to the intention of the testator and the purchaser be allowed only to hold an estate tail, being as large an estate as the devisee had a right to make, such construction would tend to the creation of a perpetuity or to the making at least a new kind of estate, which is not allowed. Fearne Rem. 183.

But if this devising clause is to be construed by way of enlargement of the estate before given, it must be considered as a power, which may be executed by any of the heirs in tail. It is in this point of view [that] the family has always considered these words, for there are lands now held of great value in virtue of such sale to a Burton by the tenant in tail under this will; and. there is no adverse claim to them. It is in evidence that Joseph, the first heir in tail or devisee, by his last will and testament devised these lands in fee simple to his son, William, who aliened. Now his aliening in fee showed it was his election to take the lands under his father Joseph's will (for willing is transferring). His father designedly, in virtue of the powers given him by this clause, transfers the lands to his son William rather than that he should take them under his grandfather's will in tail; there is. here no title by descent to be preferred.

(Being unwell and late at night I went to bed.)

The charge of CHIEF JUSTICE READ was as follows. There are two principal points in this cause, different in their nature: first, matter of title; second, boundary. The first piece of evidence is a certificate of survey which seems to be relied on as the inception of the title, dated 23rd second month, 1684, certified for 775 acres as within bounded with certified plot annexed; the court conceive the certificate under the usage and customs of courts of this government to be sufficient to the first grantee to establish his title. Second exhibit, a power of attorney to convey said land. Third, the will of William Burton which mentions the above lands as having descended in manner aforesaid. With respect to the construction of this will, there is a devise of a tract of land to John in Long-neck and the above tract to be divided between Joseph and Woolsey; and, in case of John's death, Woolsey to have John's part and Joseph to have the whole of Cheat, which properly vested in Joseph on the death of John. And he received therein an estate tail. The liberty to sell in the latter clause (to wit, the liberty of one brother's selling to another,) is void as the intention of the devisor appears to be to continue the estate tail (to the purchaser, I suppose) from the construction therein contained. Thomas, the lessor of plaintiff, is the proper heir in tail at the present time. With respect to location, as the first boundary Stephen's creek has been ascertained, there could no more land pass by the resurvey than was originally contained within the lines of Cheat.

Notwithstanding, a verdict by as intelligent a jury as was ever impanelled in Sussex was given for the defendants.